2006 ME 64

STATE of Maine

v.

David R. LAKIN

and

State of Maine

v.

Shaun M. Tuttle.

Supreme Judicial Court of Maine.

Argued: April 11, 2006.

Decided: June 6, 2006.

G. Steven Rowe, Attorney General, Donald W. Macomber, Asst. Atty. Gen. (orally), Lisa P. Marchese, Asst. Atty. Gen., Augusta, for State.

Verne E. Paradie Jr., Esq. (orally), Trafton & Matzen, LLP, Auburn, (for David Lakin), Seth Berner, Esq. (orally), Portland, (for Shaun Tuttle), for defendants.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

CLIFFORD, J.

[¶ 1] David R. Lakin and Shaun M. Tuttle each appeal from judgments of conviction for murder, 17–A M.R.S. § 201(1)(A), (B) (2005), and kidnapping (Class A), 17–A M.R.S. § 301(1)(B)(1) (2005) entered in the Superior Court (Androscoggin County, *Delahanty, J.*) following a joint jury trial. Lakin and Tuttle contend that the court exceeded its discretion in denying their motions to sever the trial.[1] We are unpersuaded by their contentions and affirm the convictions.

## I. BACKGROUND

[¶ 2] Viewing the evidence in the light most favorable to the State, *see State v.*

---

1. The defendants do not challenge the sufficiency of the evidence to support the convictions.

*Turner*, 2001 ME 44, ¶ 6, 766 A.2d 1025, 1027, the evidence presented at trial disclosed the following facts. Late in the evening of March 9, 2004, David Lakin and Shaun Tuttle met after an evening of drinking at a bar in Lewiston. Together, they went to the home of eighty-one-year-old James McManus, entered McManus's building, woke McManus up, and demanded the keys to McManus's car. They wrapped a belt around McManus's neck, and then led him outside and into his car. They drove McManus to a secluded dirt road in Turner, where McManus was strangled with a rope and then laid down on the road. McManus was run over with the car, crushing his skull and resulting in his death.

[¶ 3] Following an investigation, both Lakin and Tuttle were indicted by a grand jury in the Superior Court on one count each of murder, 17–A M.R.S. § 201(1)(A), (B), and kidnapping (Class A), 17–A M.R.S. § 301(1)(B)(1). They pleaded not guilty to both charges.

[¶ 4] Soon after, the State filed notices of joinder with the court pursuant to M.R.Crim. P. 8(b), asserting that because the acts for which they were charged were the same, and involved the same witnesses, the State intended to try Lakin and Tuttle together in a single trial. Lakin and Tuttle each filed a motion to sever pursuant to M.R.Crim. P. 8(d), relying on *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968)[2] to contend that prejudice would result in the admission of inculpatory statements that each of them had given to police.

[¶ 5] The pretrial procedure governing the issue of joint or separate trials was correctly and appropriately handled by the Superior Court. By order dated January 19, 2005, the court granted the motions to sever, and set out three ways that the trial of the two defendants could proceed: (1) try the two defendants together before a single jury, with the inculpatory statements of both defendants being excluded; (2) try the two defendants together, but before two separate juries, with the inculpatory statements made by the other defendant excluded from presentation to each jury; or (3) try the two defendants in two completely separate trials. The State agreed not to proffer the inculpatory statements of either defendant, and elected to proceed by trying Lakin and Tuttle in a single trial before a single jury. The court then vacated its prior order granting the motions to sever, denied the motions, and conducted a joint jury trial in March of 2005. At the trial, Lakin and Tuttle each testified and each asserted that the other was primarily responsible for McManus's death.

[¶ 6] The jury returned a verdict of guilty as to both counts against both defendants. The court sentenced Lakin to fifty-two years incarceration for murder and twenty years incarceration for kidnapping, to be served concurrently, and sentenced Tuttle to forty-seven years incarceration for murder and twenty years incarceration for kidnapping, also to be served concurrently.[3] Lakin and Tuttle then filed this appeal.

---

**2.** In *Bruton,* the United States Supreme Court held that when multiple defendants are tried together, the admission of a non-testifying defendant's confession implicating his co-defendant violates the co-defendant's right to confront witnesses pursuant to the Sixth Amendment to the United States Constitution.

*Bruton v. United States,* 391 U.S. 123, 135–37, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

**3.** The sentence review panel denied the sentence appeals of both Lakin and Tuttle. *State v. Lakin,* No. SRP–05–411 (Me.Sent.Rev.Panel, Dec. 19, 2005); *State v. Tuttle,* No. SRP–05–387 (Me.Sent.Rev.Panel, Dec. 19, 2005).

## II. DISCUSSION

[¶ 7] Lakin and Tuttle contend that the trial court erred in denying their Rule 8(d) motions to sever the trial. "The trial court has substantial discretion when it acts on a motion to sever, and its decision will be upheld unless it is demonstrated that the decision is an improper exercise of its discretion and prejudice is shown." *State v. Parsons,* 2005 ME 69, ¶ 13, 874 A.2d 875, 879.

[¶ 8] The joinder of trials has long been favored by courts in order to "promote economy and efficiency and to avoid a multiplicity of trials, where these objectives can be achieved without substantial prejudice to the right of the defendants to a fair trial." *Bruton,* 391 U.S. at 132 n. 6, 88 S.Ct. 1620. "In making a determination on a Rule 8(d) motion, the court must balance the general policy in favor of joint trials against the prejudice to a defendant which may result." *Parsons,* 2005 ME 69, ¶ 13, 874 A.2d at 879 (quotation marks omitted). It is the burden of the party moving for severance to show facts prior to trial that a joint trial would result in prejudice. *State v. Boucher,* 1998 ME 209, ¶ 9, 718 A.2d 1092, 1094.

[¶ 9] Lakin and Tuttle contend that their mutually exclusive antagonistic defenses constitute such prejudice, and that severance was mandated as a matter of law. Specifically, they argue that in this case, the testimony of each of them accusing the other of killing the victim is so inconsistent that the jury's belief of one co-defendant necessarily constitutes a rejection of the other co-defendant's testimony.[4] Further, they contend, in these circumstances, one co-defendant improperly becomes, in addition to the State, a "second prosecutor" to the other.

[¶ 10] The United States Supreme Court has never said, nor have we, that severance is required solely because co-defendants offer conflicting defenses. Indeed, in cases with factually similar circumstances, we have held, as has the Supreme Court, that severance was not mandated. In *Zafiro v. United States,* four defendants were accused of distributing illegal drugs and, following the denial of their motions to sever, all four defendants were tried together. 506 U.S. 534, 535–36, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993). All four were convicted of various illegal drug charges. *Id.* at 536–37, 113 S.Ct. 933. The Court held that "[m]utually antagonistic defenses are not prejudicial *per se,*" and that, despite the existence of some prejudice, the trial court may fashion relief tailored to the specific prejudice at issue, such as a cautionary jury instruction. *Id.* at 538–39, 113 S.Ct. 933. Severance should therefore be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* at 539, 113 S.Ct. 933. Examples of such instances may include, the Court noted, "evidence of a codefendant's wrongdoing in some circumstances," the admission of evidence probative of one defendant's guilt but technically only admissible against the other defendant, as in the case of *Bruton,* or the exclusion of exculpatory evidence that would be admissible in separate trials. *Id.* The defendants in *Zafiro* could point to no such specific prejudice. *Id.* at 539–40.

[¶ 11] The Court held that the risk that the jury would conclude that one of the defendants must be guilty without regard to whether or not the evidence against them was sufficient is remedied by limiting

---

4. Tuttle testified that he passed out in the car while Lakin strangled and ran over McManus, whereas Lakin testified that it was he who passed out in the car while Tuttle strangled and ran over McManus.

jury instructions. *Id.* at 540–41. Such an instruction states that it is the government's burden to prove that each defendant committed the crimes charged beyond a reasonable doubt, and that the jury must separately consider the evidence against each defendant. *Id.* at 540–41. The Supreme Court thus affirmed the convictions in *Zafiro.* *Id.* at 541, 113 S.Ct. 933.

[¶ 12] Similarly, in *State v. Chesnel,* two defendants, Chesnel and Tomah, were indicted for murder and robbery after the victim was discovered dead in a hotel having suffered a blunt head injury. 1999 ME 120, ¶¶ 2, 4, 734 A.2d 1131, 1134. Both Chesnel and Tomah admitted to being present when the victim was killed, but each accused the other of the attack. *Id.* ¶ 3, 734 A.2d at 1134. The defendants were tried together, and both were convicted on both counts. *Id.* ¶ 4, 734 A.2d at 1134. On appeal, Chesnel argued that because the defenses of Chesnel and Tomah were so antagonistic, severance was required. *Id.* ¶ 12, 734 A.2d at 1135. Relying on *Zafiro,* we rejected that argument, stating "[a]n allegation that two codefendants will present antagonistic defenses and point the finger at each other is not sufficient to require severance of a joint trial." *Id.* In addition, the court gave a jury instruction similar to that given in *Zafiro.* *Id.* ¶ 12, 734 A.2d at 1135–36. We concluded that the trial court did not exceed its discretion in denying Chesnel's motion to sever. *Id.* ¶ 13, 734 A.2d at 1136.

[¶ 13] The Supreme Court's holding in *Zafiro* and our holding in *Chesnel* are indistinguishable from Lakin and Tuttle's case. The antagonistic defenses to which Lakin and Tuttle refer are strikingly similar to those in *Chesnel* in which both defendants accused each other of the crime. Further, Lakin and Tuttle do not dispute that the jury in their case received a limit-ing instruction consistent with *Zafiro.* Because Lakin and Tuttle offer no specific prejudice of the kinds noted in *Zafiro,* nor do they distinguish their defenses of simply accusing each other from our holding in *Chesnel,* we do not disturb the trial court's decision to conduct a joint trial.

The entry is:

Judgments affirmed.