2010 ME 117

### STATE of Maine

v.

### Heather A. DUCASSE.

Supreme Judicial Court of Maine.

Argued: Oct. 5, 2010.

Decided: Nov. 9, 2010.

Thomas S. Marjerison, Esq. (orally), Norman, Hanson & DeTroy, LLC, Portland, ME, for Heather A. Ducasse.

Evert N. Fowle, District Attorney, Paul Rucha, Asst. Dist. Atty. (orally), Augusta, ME, for State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER,* MEAD, GORMAN, and JABAR, JJ.

GORMAN, J.

[¶ 1] Heather A. Ducasse appeals from a judgment of conviction for manslaughter (Class A), 17–A M.R.S. § 203(1)(A) (2009), and aggravated operating under the influence (Class B), 29–A M.R.S. § 2411(1–

---

* Although not available at oral argument, Justice Silver participated in this opinion. *See* M.R.App. P. 12(a) ("A qualified justice may participate in a decision even though not present at oral argument.").

A)(A), (1–A)(D)(1–A), (5)(D–2) (2008), entered in the Superior Court (Kennebec County, *Mills, J.*) following a jury trial. Ducasse contends that the court violated her Sixth Amendment right to confront witnesses by admitting in evidence a certificate of compliance from the manufacturer of the blood collection tubes in the blood-alcohol kit used to collect Ducasse's blood sample.[1] We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2]  "We review the evidence presented at trial in the light most favorable to the State." *State v. Murphy*, 2010 ME 28, ¶ 2, 991 A.2d 35, 36.

[¶ 3]  On July 11, 2008, Ducasse and the driver of a second motor vehicle were involved in a head-on collision. The driver of the other vehicle died as a result of that collision. Ducasse, who was slightly injured, was taken to a local hospital. A blood sample taken from Ducasse there approximately two hours after the accident revealed that Ducasse's blood-alcohol level at that time was 0.19%. Ducasse was subsequently charged with manslaughter (Class A), 17–A M.R.S. § 203(1)(A), and operating under the influence (Class B), 29–A M.R.S. § 2411(1–A)(A), (1–A)(D)(1–A), (5)(D–2).[2] She pleaded not guilty to both charges.

[¶ 4]  In order to establish that Ducasse had an elevated blood-alcohol level at the time of the accident, the State offered testimony from the officer who was present when the blood sample was taken from Ducasse and who later transported the sample to the State lab for testing; a "Certificate of Compliance" issued by BD Diagnostics, the manufacturer of the blood collection tubes used in blood-alcohol kits; and the testimony of the chemist who analyzed the blood sample.

[¶ 5]  The certificate of compliance recites that manufacturing specifications require certain amounts of powdered additives in each tube, that the tubes are manufactured specifically for blood-alcohol determination, and that the chemicals added "will not disturb the integrity of the blood sample relative to the alcohol content." Ducasse objected to the admission of the certificate on the ground that its admission would violate her Sixth Amendment right to confront the witnesses against her. The trial court concluded that the statements in the certificate were nontestimonial and admitted the document.

[¶ 6]  The State lab approves blood-alcohol kits like the one used in this case. The chemist explained that, before those kits are distributed to law enforcement agencies, the lab tests one kit out of every batch of one hundred for the presence of alcohol or other volatiles, and, based on the sample tested from Ducasse's batch, reported that the kit tested contained no alcohol or other volatiles. The chemist also testified that Ducasse's blood-alcohol kit was sealed when he received it. He de-

---

1.  Ducasse also contends that (1) the indictment was not sufficient to charge the Class B offense of operating under the influence, and (2) the court abused its discretion in admitting expert testimony on the speed of Ducasse's vehicle. These arguments are unpersuasive.

2.  Title 29–A M.R.S. § 2411 (2008) has since been amended, though those amendments are not relevant in the present case. P.L.2009, ch. 447, §§ 37–42 (effective Sept. 12, 2009) (codified at 29–A M.R.S. § 2411 (2009)). Title 29–A M.R.S. § 2411(1–A)(A), (1–A)(D)(1–A), (5)(D–2) (2008) state that it is a Class B crime to operate a motor vehicle "[w]hile under the influence of intoxicants" or "[w]hile having a blood-alcohol level of 0.08% or more," when the operator "[i]n fact causes the death of another person."

scribed the contents of the blood-alcohol kit, and explained the procedure for testing a blood sample with a gas chromatograph. He testified that he had no personal knowledge of the amount of additives in the blood collection tubes, and acknowledged that the amount of additives could affect the reliability of the blood test. Finally, the chemist testified that he certified the result of the gas chromatograph test and that the result was a reliable and accurate measurement of the alcohol concentration in Ducasse's blood sample.

[¶ 7] The jury found Ducasse guilty of both charges. On the count of manslaughter, the court sentenced her to twelve years of imprisonment with all but six years suspended, and four years of probation. On the count of operating under the influence, the court sentenced her to four years of imprisonment, to run concurrently with the manslaughter sentence, a fine of $2100, and a ten-year license suspension. This appeal followed.

## II. DISCUSSION

### A. Confrontation Clause

[¶ 8] Ducasse contends that admission of the certificate violated her Sixth Amendment right to confront witnesses because it contained testimonial statements regarding the reliability of the blood-alcohol test. The trial court's legal conclusion that the statements in the certificate were nontestimonial, and thus admissible, is reviewed de novo. *State v. Mitchell,* 2010 ME 73, ¶ 41, 4 A.3d 478, 488; *State v. Metzger,* 2010 ME 67, ¶ 13, 999 A.2d 947, 951–52.

[¶ 9] The Confrontation Clause of the Sixth Amendment, as applied to states through the Fourteenth Amendment, *Pointer v. Texas,* 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." [3] U.S. Const. amend. VI. This Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington,* 541 U.S. 36, 53–54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

[¶ 10] Only testimonial statements are subject to exclusion by the Confrontation Clause. *Davis v. Washington,* 547 U.S. 813, 821, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *see State v. Rickett,* 2009 ME 22, ¶ 11, 967 A.2d 671, 675 ("Nontestimonial statements are not subject to Confrontation Clause restrictions."). In *Crawford,* the United States Supreme Court defined testimony as "typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." 541 U.S. at 51, 124 S.Ct. 1354 (quotation marks omitted). The Court has also identified a "core class of testimonial statements":

> [*E* ]*x parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective

---

3. Similarly, the Maine Constitution guarantees that "[i]n all criminal prosecutions, the accused shall have a right to . . . be confronted by the witnesses against the accused." Me. Const. art. I, § 6. Ducasse does not contend that article I, section 6 of the Maine Constitution provides any greater protection than its federal counterpart.

witness reasonably to believe that the statement would be available for use at a later trial. *Melendez–Diaz v. Massachusetts,* ——— U.S. ———, 129 S.Ct. 2527, 2531, 174 L.Ed.2d 314 (2009) (quotation marks omitted); *accord Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354.

[¶ 11] Recently, the Supreme Court held that the admission of certificates declaring that a forensic analysis had determined that substances found on a defendant were cocaine violated the defendant's right to be confronted with the witnesses against him. *Melendez–Diaz,* 129 S.Ct. at 2532. In holding that the certificates fell within the "core class of testimonial statements," the Court stated that the certificates were "functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination." *Id.* at 2532 (quotation marks omitted). The Court further reasoned that cross-examination would ensure accurate forensic analysis and "weed out" incompetent analysis, and that confrontation would not be useless "in testing analysts' honesty, proficiency, and methodology." *Id.* at 2536–38. The Court distinguished business records from the core class, however, stating that they are generally admissible absent confrontation "because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 2538–40.

[¶ 12] Recently, we considered whether a certificate issued by the Secretary of State, which recited that notice of suspension had been sent to the defendant, violated his right to confront witnesses. *Murphy,* 2010 ME 28, ¶ 1, 991 A.2d at 36. We said: "Read expansively, *Melendez–Diaz* might be interpreted as extending the definition of testimony beyond sworn certificates addressing scientific analysis

prepared for purposes of a criminal prosecution, to include sworn certificates that authenticate and summarize routine governmental records." *Id.* ¶ 19, 991 A.2d at 41. In determining that the certificate was admissible, we reasoned that it contained "neutral information" and did not involve expert analysis or contain "testimony" of the Secretary's personal knowledge. *Id.* ¶ 21, 991 A.2d at 42. We also noted that the certificate was not "primarily maintained and employed for purposes of criminal prosecution," and concluded that "the crucible of cross-examination" had little practical benefit because "the data collected are not subject to any serious interpretation, judgment, or analysis." *Id.* ¶¶ 22–24, 991 A.2d at 42–43. Finally, we reasoned that the certificate was reliable as a public record. *Id.* ¶ 25, 991 A.2d at 43–44.

[¶ 13] Like the Secretary of State's certificate in *Murphy,* the certificate of compliance is not a "sworn certificate[ ] addressing scientific analysis prepared for purposes of a criminal prosecution." It is a manufacturer's certificate addressing its compliance with manufacturing specifications. Because the certificate does not report the results of a scientific analysis, cross-examination would have little or no practical benefit. Similarly, confrontation would not ensure accurate forensic analysis, "weed out" incompetent analysis, or provide defendants with an opportunity to explore the analysts' methodologies because the certificate does not report any analysis. Unlike the certificates in *Melendez–Diaz,* the certificate of compliance is a business record; it was "created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial." For these reasons, we conclude that the statements in the certificate are not testimonial, and that admission of the certificate did not violate

Ducasse's Sixth Amendment right to confrontation.

The entry is:

Judgment affirmed.