MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2014 ME 92
Docket:        Cum-13-486
Submitted
 On Briefs:    May 29, 2014
Decided:       July 15, 2014

Panel:         SAUFLEY, C.J., and ALEXANDER, SILVER, GORMAN, and JABAR, JJ.

## STATE OF MAINE

v.

## CHAD A. LOGAN

SILVER, J.

[¶1]   Chad A. Logan appeals from a judgment of conviction of unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1) (2013), unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C) (2013), and two counts of assault (Class D), 17-A M.R.S. § 207(1)(A) (2013), entered in the trial court (*Cole, J.*) after a jury trial.  Logan argues that (1) the court erred in prohibiting Logan from eliciting testimony regarding sexual abuse that the victims' mother experienced as a child, (2) the court abused its discretion in denying Logan's motion for a mistrial after a portion of a police interview that the parties had agreed to redact was inadvertently played for the jury, (3) the court committed obvious error in failing to excuse or inquire further of a juror who worked for the same company as Logan,

and (4) there was insufficient evidence to support the jury's verdict. We disagree and affirm the judgment.

## I. BACKGROUND

[¶2] Viewed in the light most favorable to the jury's verdict, the record supports the following facts. *See State v. Diana*, 2014 ME 45, ¶ 2, 89 A.3d 132. On December 25, 2012, E.L. and C.L., then eleven and thirteen years old, respectively, went to their father's apartment in Brunswick to celebrate Christmas. One of the guests present was Logan, who is E.L. and C.L.'s uncle. After the family ate and opened presents, E.L. and C.L. played with their gifts in the living room. C.L. was on the floor using a record player she had received for Christmas, and E.L. and Logan were on the couch doing arts and crafts. At times, E.L. sat next to Logan, but at other times Logan would touch E.L.'s ribs and pull her onto his lap. Logan left later that evening, but returned the next day, and he and E.L. continued to do arts and crafts in the living room, with E.L. at times sitting on Logan's lap as she had the previous day.

[¶3] On December 25 or 26, 2012, while E.L. was on his lap, Logan touched E.L.'s back under her shirt, then moved his hands and touched her breasts under her shirt. Logan also touched her genitals over her clothing. While he was doing this, Logan said, "I love you so much," and asked E.L. whether it felt good. At some point on December 25 or 26, 2012, Logan kissed both E.L. and C.L. on

their mouths, with his top lip between each girl's lips. These kisses were unlike kisses E.L. and C.L. received from other family members, and made them feel uncomfortable. Other family members did not see anything unusual occur between Logan and the girls, but there were times when Logan and the girls were alone in the living room.

[¶4] E.L. and C.L. returned to their mother's house on the evening of December 26, 2012. Later that winter, E.L. would go to bed after school, cry at the dinner table, and then go back to bed. Eventually, in March 2013, E.L. and C.L. told their mother what had occurred at Christmas. The next day, E.L. was interviewed by police officers with her mother present. E.L. later participated in a forensic interview at Spurwink Clinic without her mother present.

[¶5] On June 7, 2013, Logan was indicted for unlawful sexual contact (Class B), 17-A M.R.S. § 255-A(1)(E-1), unlawful sexual touching (Class D), 17-A M.R.S. § 260(1)(C), and two counts of assault (Class D), 17-A M.R.S. § 207(1)(A). A jury trial was held on September 10 and 12, 2013.

[¶6] At trial, Logan sought to elicit testimony from E.L. and C.L.'s mother about her own childhood experience with sexual abuse by her father. The State objected on relevance grounds. Logan argued that this evidence was necessary to show that the mother was hypersensitive about sexual abuse and that she raised the children in a manner that caused them to perceive innocuous contact as sexual.

4

The court permitted Logan to question the mother generally about her "hypervigilan[ce]" with respect to her children, but did not permit inquiry into the mother's childhood sexual abuse.

[¶7] The mother conceded that she was indeed more vigilant than most people concerning the people she allowed her children to be around, and testified that she did not allow E.L. and C.L. to have contact with her father. E.L. similarly testified that she was not allowed to see her maternal grandfather because "he hurts people, he has a problem." Later, in an audio-recorded police interview played for the jury, Logan said that E.L.'s mother had been "molested" as a child and had previously accused Logan of inappropriately touching E.L. when E.L. was a toddler.

[¶8] The parties agreed that certain portions of Logan's interview with the police would not be played for the jury, and that the prosecutor would turn the sound off at certain times during the recording. This included a portion of the interview in which one of the officers commented that E.L. and C.L. are "deemed to be credible . . . [and] have no reason to lie." When the prosecutor turned the volume back up during this portion of the recording, the jury heard the words "reason to lie" or "no reason to lie," apparently due to an error in the timing agreed upon by the parties.

[¶9]  After the recording was played, Logan moved for a mistrial.  The court denied the motion, concluding that the words "no reason to lie," standing alone, were not prejudicial, and that a curative instruction would be sufficient.[1]  The parties agreed that the court would include in its final charge an instruction that the jury was to disregard witnesses' opinions as to the credibility of evidence.  The court ultimately gave the jury such an instruction.

[¶10]  Logan was the last witness called by the defense.  During his testimony, Logan stated that he works at Bath Iron Works.  After Logan testified and both parties rested, the court stated on the record outside the jury's presence that it had learned from the court officer that the jury foreperson also works at Bath Iron Works, did not recognize Logan, and said that "it wouldn't have any effect upon the process."  The court questioned Logan, who said that he did not recognize the juror.  The court found that this development did not "do[] anything to the process."  Logan did not request that the juror be excused, or that any further inquiry be made of the juror.

[¶11]  The jury found Logan guilty on all counts.  The court sentenced Logan on the unlawful sexual contact count to the Department of Corrections for a term of six years, all but thirty months suspended, with eight years of probation,

---

[1]  Logan renewed his motion for a mistrial at the close of the State's case, at the close of all the evidence, and again after the jury rendered its verdict.  The court denied the motion in each instance.

6

and to lesser concurrent sentences on the remaining counts. Logan timely appealed.

## II. DISCUSSION

### A. Cross-Examination of the Victims' Mother

[¶12] Criminal defendants have the "right to conduct reasonable or otherwise appropriate cross-examination to expose facts from which jurors could appropriately draw inferences relating to a witness's reliability." *State v. Mills*, 2006 ME 134, ¶ 9, 910 A.2d 1053 (quotation marks omitted). Defendants do not, however, have "free [rein] to present testimony without the restraints imposed by the rules of evidence." *Id.* We review rulings on the relevance of evidence for clear error. *State v. Dolloff*, 2012 ME 130, ¶ 24, 58 A.3d 1032.

[¶13] The court permitted Logan to elicit testimony that the victims' mother was more vigilant than most people in terms of the people she allowed her children to be around, and that she did not allow her children to have contact with their grandfather. The court also allowed Logan to elicit testimony suggesting that the mother's presence at police interviews had influenced the girls' statements. The court did not err in determining that the specific reason for the mother's "hypervigilan[ce]"—i.e., that she herself had been sexually abused—was not relevant. *See* M.R. Evid. 401, 402; *Dolloff*, 2012 ME 130, ¶ 24, 58 A.3d 1032. In any event, there was no prejudice to Logan because the mother's history was later

alluded to in Logan's interview with the police, and Logan made no attempt to further explore that issue after the interview was played for the jury. *See* U.C.D.R.P.–Cumberland County 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); M.R. Crim. P. 52(a) (same).

B.      Motion for a Mistrial

[¶14]   "A motion for a mistrial should be denied except in the rare circumstance that the trial is unable to continue with a fair result and only a new trial will satisfy the interests of justice." *State v. Poblete*, 2010 ME 37, ¶ 26, 993 A.2d 1104 (quoting *State v. Bridges*, 2004 ME 102, ¶ 11, 854 A.2d 855). Because the trial court has a "superior vantage point," we review the denial of a motion for a mistrial for an abuse of discretion. *Id.* We will overrule the denial of a mistrial "only in the event of exceptionally prejudicial circumstances or prosecutorial bad faith." *Id.* (quoting *State v. Cochran*, 2000 ME 78, ¶ 28, 749 A.2d 1274). "[T]he trial court's determination of whether exposure to potentially prejudicial extraneous evidence would incurably taint the jury verdict or whether a curative instruction would adequately protect against consideration of the matter stands unless clearly erroneous." *State v. Nelson*, 2010 ME 40, ¶ 6, 994 A.2d 808 (alteration in original) (quotation marks omitted).

[¶15] There are no exceptionally prejudicial circumstances here because the fragment of the police interview that the jury heard—"no reason to lie"—is not highly prejudicial in and of itself. The jury did not hear the preceding portion of the interview that made clear that the officer was referring to the victims' credibility. The court instructed the jury to disregard any witnesses' statements about the credibility of the evidence, and made clear to the jury that it was the final arbiter of credibility. There is no evidence of prosecutorial misconduct or bad faith, and Logan does not claim any. The court did not err or abuse its discretion in denying Logan's motion for a mistrial. *See Nelson*, 2010 ME 40, ¶ 6, 994 A.2d 808; *Poblete*, 2010 ME 37, ¶ 26, 993 A.2d 1104.

C.    Failure to Excuse the Jury Foreperson

[¶16] We review the court's decision not to excuse the jury foreperson who worked for the same company as Logan only for obvious error because Logan failed to object. *See State v. Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066 (defining obvious error). Ordinarily, "[w]hen a juror's impartiality is questioned, the court should interview the juror to determine whether it is satisfied with the juror's ability to . . . participate in reaching a verdict based on the evidence and the law." *State v. Rollins*, 2008 ME 189, ¶ 12, 961 A.2d 546 (quotation marks omitted). Here, although the court did not interview the juror, it was clear that the juror and Logan did not recognize one another, and Logan did not request that the court

excuse the juror or conduct any further inquiry. Under these circumstances, there was no obvious error. *See Lovejoy*, 2014 ME 48, ¶ 19, 89 A.3d 1066; *see also Rollins*, 2008 ME 189, ¶ 21, 961 A.2d 546 ("We cannot say that any juror who is or was in the past socially acquainted with a witness cannot be impartial. Nor must a juror who works for the same company as a trial witness be deemed impartial." (citation omitted)).

D.     Sufficiency of the Evidence

[¶17]  We will set aside a conviction for insufficiency of the evidence only if no rational juror could have been convinced of the defendant's guilt beyond a reasonable doubt. *See State v. Robbins*, 2010 ME 62, ¶ 14, 999 A.2d 936; *State v. True*, 438 A.2d 460, 471 (Me. 1981). We view the evidence in the light most favorable to the State. *State v. Williams*, 2012 ME 63, ¶ 49, 52 A.3d 911. "The fact-finder is permitted to draw all reasonable inferences from the evidence" and "to selectively accept or reject testimony presented based on the credibility of the witness or the internal cogency of the content." *Id.* (quotation marks omitted). "The weight to be given to the evidence and the determination of witness credibility are the exclusive province of the jury." *State v. Filler*, 2010 ME 90, ¶ 24, 3 A.3d 365 (quotation marks omitted). "A victim's testimony, by itself, is sufficient to support a guilty verdict for a sex crime . . . if the testimony addresses each element of the crime and is not inherently incredible." *State v. Moores*,

2006 ME 139, ¶ 9, 910 A.2d 373.  Although there were weaknesses in the victims' testimony—particularly their inability to more precisely recall the sequence of events on December 25 and 26, 2012—their testimony addressed all of the elements of the offenses, *see* 17-A M.R.S. §§ 207(1)(A), 251, 255-A(1)(E-1), 260(1)(C) (2013), and was not inherently incredible.  The jury apparently credited the victims' testimony, and, viewed in the light most favorable to the State, it amply supports the jury's verdict.  *See Williams*, 2012 ME 63, ¶ 49, 52 A.3d 911.

The entry is:

Judgment affirmed.

---

**On the briefs:**

Kevin G. Moynihan, Esq., Fairfield & Associates, Portland, for appellant Chad A. Logan

Stephanie Anderson, District Attorney, and Julia Sheridan, Asst. Dist. Atty., Prosecutorial District No. Two, Portland, for appellee State of Maine

Cumberland County Unified Criminal docket number CR-2013-2204
FOR CLERK REFERENCE ONLY