2012 ME 64

**STATE of Maine**

v.

**Darlene GEORGE.**

Supreme Judicial Court of Maine.

Argued: Feb. 16, 2012.
Decided: May 3, 2012.

See also, 52 A.3d 911, 2012 WL 3887526.

Stuart W. Tisdale, Jr., Esq. (orally), Tisdale & Davis, P.A., Portland, on the briefs, for appellant Darlene George.

William J. Schneider, Attorney General, and Donald W. Macomber, Asst. Atty. Gen. (orally), Augusta, on the briefs, for appellee State of Maine.

Stuart W. Tisdale Jr., Esq., argued, for appellant Darlene George.

Donald W. Macomber, Asst. Atty. Gen., argued, for appellee State of Maine.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

ALEXANDER, J.

[¶ 1]   Darlene George appeals from a judgment of conviction of intentional or knowing murder, 17–A M.R.S. § 201(1)(A) (2011),[1] and conspiracy to commit murder (Class A), 17–A M.R.S. § 151(1)(A) (2011),[2] entered in the Superior Court (York County, *Brennan, J.*) following a joint jury trial.[3]

[¶ 2]   George argues on appeal that (1) the court erred when it denied her motion to suppress her grand jury testimony; (2) the court erred in denying Jeffrey L.

---

1.  Title 17–A M.R.S. § 201(1)(A) (2011) provides:

1.  A person is guilty of murder if the person:
    A.  Intentionally or knowingly causes the death of another human being.

2.  Title 17–A M.R.S. § 151(1)(A) (2011) provides:

1.  A person is guilty of criminal conspiracy if, with the intent that conduct be performed that in fact would constitute a crime or crimes, the actor agrees with one or more others to engage in or cause the performance of the conduct and the most serious crime that is the object of the conspiracy is:
    A.  Murder. Violation of this paragraph is a Class A crime.

3.  George was tried jointly with her brother, Jeffrey L. Williams, who also was convicted of intentional or knowing murder and conspiracy to commit murder. *See State v. Williams,* 2012 ME 63, 52 A.3d 911.

Williams's motion to sever the trial; (3) the indictment was insufficient; (4) the evidence was insufficient to support the conviction of murder and conspiracy to commit murder; and (5) because the State relied heavily on the testimony of a cooperating witness, the conviction was fundamentally unfair.

[¶ 3] George also argues, similarly to Williams's arguments on appeal, that the court erroneously prohibited cross-examination of the cooperating witness regarding his prior arrests and the prosecutor improperly vouched for the cooperating witness's credibility. Because we addressed these issues in detail in the companion opinion, *State v. Williams*, 2012 ME 63, ¶¶ 41–48, 52 A.3d 911, we do not discuss them further in this opinion.

[¶ 4] We affirm the judgment.

## I. CASE HISTORY

[¶ 5] The history of this case is described in greater detail in *State v. Williams*, 2012 ME 63, 52 A.3d 911, which is published concurrently with this opinion. On June 20, 2008, at approximately 1:00 a.m., during a simulated home invasion, two intruders murdered George's husband in his home in Old Orchard Beach. Approximately one week prior to the murder, George had conspired with Williams, her brother, and Rennie Cassimy, a self-described "gigolo" with whom she was having an affair, to execute the simulated home invasion with the intent to murder the victim.

[¶ 6] During the course of the investigation, George testified, pursuant to subpoenas, before the York County grand jury on July 7, 2008, and on September 2, 2008. At each proceeding, George was not advised of her right to decline to answer questions because of a risk of self-incrimination, and she was not informed that she was a potential suspect in the case. By the time of her grand jury appearance on September 2, George was a focus of the State's investigation as a potential suspect in the homicide.

[¶ 7] Following the grand jury proceedings, Williams and Cassimy were indicted for the intentional or knowing murder, 17–A M.R.S. § 201(1)(A), or depraved indifference murder, 17–A M.R.S. § 201(1)(B), of the victim on September 5, 2008. In a superseding indictment on March 4, 2009, they were charged with an additional count of conspiracy to commit murder, 17–A M.R.S. § 151(1)(A). George was also indicted on March 4, 2009, for the intentional or knowing murder, 17–A M.R.S. § 201(1)(A), or depraved indifference murder, 17–A M.R.S. § 201(1)(B), of the victim and conspiracy to commit murder, 17–A M.R.S. § 151(1)(A). George, Williams, and Cassimy pleaded not guilty to both counts.

[¶ 8] After George's indictment, pursuant to M.R.Crim. P. 8(b), the State filed a notice of joinder to join George, Williams, and Cassimy as codefendants in one trial. Williams filed a motion to sever his trial from George and Cassimy's trial, which the motion court denied.

[¶ 9] On August 5, 2009, George filed a motion to suppress her grand jury testimony on the grounds that (1) she was not advised of her right to decline to answer questions; (2) she was not informed that she was a "target" in the case; (3) her testimony was compelled; (4) she did not have the benefit of counsel; and (5) as a result, her testimony was involuntary. After a hearing, the court denied George's motion to suppress her grand jury testimony. The court reasoned that "[t]here is no constitutional requirement that a subpoenaed witness, including a potential target witness of grand jury action, be given the equivalent of a *Miranda* warning before testifying ... [and] Ms. George had access

to legal counsel concerning Grand Jury matters before her appearance."

[¶ 10] George and Williams's trial began in June 2010. Cassimy, who had entered an agreement to plead guilty to conspiracy and cooperate with the State, testified in detail to the codefendants' conspiracy and their role in the murder of the victim. George exercised her right not to testify; Williams did testify. Williams testified that he traveled to Maine to visit George on June 19, 2008; however, on the night the victim was murdered, he was in a motel sleeping. He also testified that he had no knowledge regarding who murdered the victim.

[¶ 11] In addition to the charges of murder and conspiracy for which George was indicted, the court instructed the jury on the elements of accomplice liability, pursuant to 17–A M.R.S. § 57(3) (2011).[4] The jury returned a verdict finding George and Williams guilty on both counts. The court sentenced George to forty years for murder and thirty years for conspiracy, to be served concurrently. The court sentenced Williams to life in prison for murder and thirty years for conspiracy, also to be served concurrently. Both defendants filed timely appeals.

## II. LEGAL ANALYSIS

### A. Denial of Motion to Suppress

[¶ 12] George argues that the court erred in denying her motion to suppress her grand jury testimony because her statements were involuntary. In support of this, George asserts that she was not advised of her privilege against self-incrimination, she was not informed that she was a suspect, she testified under compulsion, and the grand jury proceeding is an inherently coercive setting.

■ [¶ 13] "We review the denial of a motion to suppress for clear error as to factual findings and de novo as to issues of law." *State v. Dodge,* 2011 ME 47, ¶ 10, 17 A.3d 128.

### 1. Grand Jury Witnesses and the Privilege Against Self–Incrimination

[¶ 14] The Fifth Amendment to the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In the Maine Constitution, Article I, section 6 guarantees that "[t]he accused shall not be compelled to furnish or give evidence against himself or herself." Me. Const. art. I, § 6.

■ [¶ 15] The privilege against self-incrimination extends to grand jury proceedings. *United States v. Washington,* 431 U.S. 181, 186, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977); *Counselman v. Hitchcock,* 142 U.S. 547, 562, 12 S.Ct. 195, 35 L.Ed. 1110 (1892) (providing that the objective of the privilege against self-incrimination is "to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime"). Because "the Constitution does not forbid the asking of criminative questions," the grand jury witness must invoke the privilege to benefit from its protection. *United States v. Mandujano,* 425 U.S. 564, 574, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976); *see State v. Richard,* 1997 ME 144, ¶ 12, 697 A.2d 410. That said, the privilege against self-incrim-

---

4. Title 17–A M.R.S. § 57(3) (2011) provides:

A person is an accomplice of another person in the commission of a crime if [w]ith the intent of promoting or facilitating the commission of the crime, the person solicits such other person to commit the crime, or aids or agrees to aid or attempts to aid such other person in planning or committing the crime. A person is an accomplice under this subsection to any crime the commission of which was a reasonably foreseeable consequence of the person's conduct.

ination "does not preclude a witness from testifying voluntarily in matters which may incriminate him." *United States v. Monia,* 317 U.S. 424, 427, 63 S.Ct. 409, 87 L.Ed. 376 (1943).

[¶ 16] The United States Supreme Court has indicated that the Fifth Amendment does not require that a grand jury witness be given the full panoply of warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), prior to testifying before the grand jury. *See Mandujano,* 425 U.S. at 580–82, 96 S.Ct. 1768. Further, there is no constitutional mandate that a grand jury witness be informed that she is a "target" of an investigation that is subject to grand jury consideration. *See Washington,* 431 U.S. at 189, 97 S.Ct. 1814 ("Because target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential-defendant warnings add nothing of value to protection of Fifth Amendment rights.").

[¶ 17] Whether the Constitution requires that a witness who is, in fact, a target of a grand jury investigation, but has not yet been charged with a crime, be issued a warning informing her of her Fifth Amendment right not to answer incriminating questions during the investigation has not been decided. *See Washington,* 431 U.S. at 190, 97 S.Ct. 1814 ("Since warnings were given, we are not called upon to decide whether such warnings were constitutionally required."); *Mandujano,* 425 U.S. at 582 n. 7, 96 S.Ct. 1768 ("[t]he fact that warnings were provided in this case to advise respondent of his Fifth Amendment privilege makes it unnecessary to consider whether any warning is required"); *see also United States v. Myers,* 123 F.3d 350, 360 (6th Cir.1997) (stating that the issue of what warnings

may be required for grand jury target witnesses has not been decided); *United States v. Gillespie,* 974 F.2d 796, 802–03 (7th Cir.1992) ("Given the state of flux on this issue, we must determine whether the Advice of Rights form Gillespie received provided a constitutionally sufficient warning."); 3 Wayne R. LaFave, *Criminal Procedure* § 8.10(d) at 258–61 (3d ed.2007).

[¶ 18] Although not compelled by precedent, the U.S. Department of Justice has instituted an internal policy that requires that a "target" of an investigation be notified of her status as a "target" and be advised of her privilege against self-incrimination prior to testifying before a grand jury. *See* 3 LaFave, *Criminal Procedure* § 8.10(d) at 261, 263. At least twenty-three states, either by statute or pursuant to case law, require that grand jury witnesses be given admonishments that include reference to the witness's right against self-incrimination. *See* John F. Decker, *Legislating New Federalism: The Call for Grand Jury Reform in the States,* 58 Okla. L.Rev. 341, 377–78 (2005) (collecting statutes and cases).

■ [¶ 19] We have not adopted a similar standard.[5] In this case, however, we do not need to decide whether the United States or Maine Constitutions would require that targets be expressly informed of their Fifth Amendment rights. The prosecution introduced at trial only the redacted transcript of George's testimony at the July 7, 2008, grand jury proceedings. The motion court found as fact that George was not a target of the investigation at that time. The potential for abuse that exists when prosecutors call before grand juries persons suspected of crimes who have not been informed of any charges against them, to be interrogated under judicial

5. "[T]he States are free, pursuant to their own law, to adopt a higher standard. They may indeed differ as to the appropriate resolution of the values they find at stake." *Lego v. Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

compulsion, did not yet exist because in the July grand jury proceedings, the prosecution was not aware of the potentially incriminatory nature of the disclosures sought. *Cf. Mandujano,* 425 U.S. at 597–98, 96 S.Ct. 1768 (Brennan, J., concurring). Accordingly, warnings were not required, and use of George's July 7, 2008, grand jury testimony at trial did not violate her right against compulsory self-incrimination.

### 2. Voluntariness of George's Testimony

[¶ 20] The State bears the burden to prove beyond a reasonable doubt that a defendant's statement was voluntary. *See State v. Lavoie,* 2010 ME 76, ¶ 18, 1 A.3d 408. A statement is voluntary if "it is the result of defendant's exercise of his own free will and rational intellect." *State v. Caouette,* 446 A.2d 1120, 1123 (Me. 1982). A defendant's challenge to an alleged involuntary statement "will frequently be predicated upon police elicitation or conduct," however, "that element is not a *sine qua non* for exclusion under the exclusionary rule inherent in the guarantee against self-incrimination." *Id.* at 1123.

[¶ 21] In making a determination on voluntariness, we consider the totality of the circumstances. *Dodge,* 2011 ME 47, ¶ 12, 17 A.3d 128. Previously, we have applied the following factors to measure voluntariness:

the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct.

*Id.* ¶ 12 (quoting *State v. Sawyer,* 2001 ME 88, ¶ 9, 772 A.2d 1173).

[¶ 22] Here, the totality of the circumstances establishes, beyond a reasonable doubt, that George's July grand jury testimony was voluntary. First, George was not in custody. A grand jury witness's interrogation is not analogous to a custodial interrogation. *See Mandujano,* 425 U.S. at 579–80, 96 S.Ct. 1768; *see also Washington,* 431 U.S. at 188–89, 97 S.Ct. 1814. The subject of a custodial interrogation is confronted with "an interrogation environment [that] is created for no purpose other than to subjugate the individual to the will of his examiner." *Miranda,* 384 U.S. at 457, 86 S.Ct. 1602. In contrast, the subject of a grand jury interrogation is confronted with an environment "conducive to truth telling," because the witness has been placed under oath; however, placing one under oath is not inherently coercive. *Washington,* 431 U.S. at 187, 97 S.Ct. 1814.

[¶ 23] Second, there is no evidence in the record indicating that George was mentally impaired, incapable of comprehending the grand jury proceeding, or coerced in any manner. Third, George had access to counsel prior to the grand jury proceeding. Fourth, the fact that George was compelled, pursuant to a subpoena, to testify at the grand jury proceeding does not remove her ability to invoke her privilege against self-incrimination. Finally, as discussed above, there was no constitutional requirement that the prosecutor advise George of her status as a "target" or her privilege against self-incrimination at the July 2008 grand jury proceeding.

[¶ 24] Accordingly, the court did not err in denying George's motion to suppress her grand jury testimony.

### B. Denial of Motion to Sever

[¶ 25] George argues that her trial should have been severed from

Williams's trial because they had mutually antagonistic defenses. "Mutually antagonistic defenses are not prejudicial *per se*." *Zafiro v. United States*, 506 U.S. 534, 538, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993); *accord State v. Lakin*, 2006 ME 64, ¶ 10, 899 A.2d 777. For instance, we have previously held that two codefendants' "point[ing] the figure at each other is not sufficient to require severance of a joint trial." *State v. Chesnel*, 1999 ME 120, ¶ 12, 734 A.2d 1131.

[¶ 26] We are not persuaded by George's assertion that Williams's and George's antagonistic defenses were prejudicial and, thus, warranted severance of the joint trial. Williams testified that he was in a motel all night without any knowledge of the planned home invasion or murder. In turn, George, who did not testify, put the State to its proof. The court did not err in joining the trials of George and Williams.

C. Sufficiency of the Indictment

[¶ 27] George contends that the indictment is insufficient because she was charged with murder, as a principal actor, when the evidence at trial failed to prove every element of murder as a principal actor. George further contends that the indictment is insufficient because it did not state the elements of accomplice liability for murder.

[¶ 28] An indictment must state all "the essential facts constituting the crime charged." M.R.Crim. P. 7(c); *see State v. Gauthier*, 2007 ME 156, ¶ 17, 939 A.2d 77. An indictment is sufficient when "an accused of reasonable and normal intelligence would, by the language of the indictment, be adequately informed of the crime charged and the nature thereof, so that [the accused] could properly prepare his defense ... and be protected against a subsequent prosecution for the same cause." *Gauthier*, 2007 ME 156, ¶ 17, 939 A.2d 77 (quoting *State v. Pierce*, 438 A.2d 247, 250 (Me.1981)).

[¶ 29] Contrary to George's contention, "[a] person may be guilty of a crime if [s]he personally does the acts that constitute the crime or if [s]he is an accomplice of another person who actually commits the crime." *State v. Hurd*, 2010 ME 118, ¶ 29, 8 A.3d 651; *see also State v. Nguyen*, 2010 ME 14, ¶ 15, 989 A.2d 712. To be convicted as a principal or an accomplice, "an individual need not be indicted as an accomplice." *State v. Davis*, 1997 ME 115, ¶ 10 n. 3, 695 A.2d 1183; *see State v. Allison*, 427 A.2d 471, 474 (Me.1981) (holding "that it is unnecessary to cite [the accomplice statute] or track its language in an indictment"). Accordingly, George's indictment charging the elements of murder, but not the elements of accomplice liability for murder, was sufficient.

D. Sufficiency of the Evidence

[¶ 30] George contends that Cassimy's testimony was so self-contradictory and improbable that no rational jury could find, beyond a reasonable doubt, that she committed murder and conspiracy to commit murder.

[¶ 31] Contrary to George's contention, viewing the facts and inferences that may be drawn from the facts in the light most favorable to the State, *see State v. Severy*, 2010 ME 126, ¶ 8, 8 A.3d 715; *State v. Medeiros*, 2010 ME 47, ¶ 16, 997 A.2d 95, the evidence was sufficient to support George's conviction of murder, acting as an accomplice, and conspiracy to commit murder, *see* 17–A M.R.S. § 201(1)(A); 17–A M.R.S. § 57(3); 17–A M.R.S. § 151(1)(A).

E. Fundamental Fairness of the Conviction

[¶ 32] George argues that Cassimy's testimony, the product of a plea agreement, renders her conviction funda-

mentally unfair and a violation of due process. Specifically, George asserts that Cassimy had incentive to lie in order to avoid a life sentence.

[¶ 33] "The Due Process Clause of the Constitution prohibits deprivations of life, liberty, or property without fundamental fairness through governmental conduct that offends the community's sense of justice, decency and fair play." *State v. Stade,* 683 A.2d 164, 166 (Me.1996).

[¶ 34] The testimony of a cooperating witness who "may have had motives to lie" is not "constitutionally inadmissible." *Hoffa v. United States,* 385 U.S. 293, 311, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966). It is the province of the finder-of-fact, here the jury, to determine the reliability and truthfulness of the cooperating witness's testimony. *See United States v. Tapia,* 738 F.2d 18, 20 (1st Cir.1984); *State v. Mahaney,* 437 A.2d 613, 621 (Me. 1981). To this end, safeguards are in place to protect a defendant's right to due process, including extensive and rigorous cross-examination of the cooperating witness, disclosure of the cooperating witness's agreement to the jury, and proper credibility instructions to the jury. *See Hoffa,* 385 U.S. at 311–12, 87 S.Ct. 408.

[¶ 35] The record in this case shows that these safeguards were in place. We find no error.

The entry is:

Judgment affirmed.