MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2016 ME 54
Docket:       Cum-14-415
Argued:       September 17, 2015
Decided:      April 12, 2016

Panel:        SAUFLEY, C.J., and MEAD, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

MOSES KING

JABAR, J.

[¶1]   Moses King appeals from a judgment of conviction of criminal threatening (Class D), 17-A M.R.S. § 209(1) (2015), entered in the Unified Criminal Docket (Cumberland County, *Kelly, J.*) after a jury trial.  Before trial, King moved to suppress statements that he had made after police officers stopped King's vehicle, took his license and registration, and asked him to wait for a detective to arrive on the scene.  The suppression court (*O'Neil, J.*) granted the motion in part, but denied the motion as to the statements that King made before he was placed in handcuffs and formally arrested.  At trial, the State played for the jury a video recording of the statements that King made before his formal arrest.

[¶2]  In this appeal, King argues that the suppression court erred by denying his motion in part because (1) the stop of his vehicle was not based on a reasonable, articulable suspicion; (2) his statements were made involuntarily; and

2

(3) he was subjected to a custodial interrogation and had not received *Miranda* warnings before he was formally arrested. Based upon our de novo review of the factual circumstances attending King's stop, wait, and subsequent questioning, we conclude that King was subjected to a custodial interrogation before he was formally arrested and advised of his *Miranda* rights, and that evidence of King's pre-arrest statements was therefore inadmissible against him at trial. We accordingly vacate the judgment of conviction and the order denying the motion to suppress, and remand for further proceedings.

## I. FACTUAL BACKGROUND

[¶3] The following facts are derived from the suppression court's express findings, the detective's testimony at the suppression hearing, and a video recording played at the suppression hearing.[1]

[¶4] On November 9, 2013, a woman reported that she had been assaulted by a man in a cemetery in South Portland. The woman later provided a description of the assailant and his vehicle to a detective of the South Portland Police Department who was assigned to investigate the case. On December 27, 2013, the woman called the detective and told him that she had seen her assailant drive past her as she was walking near the 7-Eleven on Congress Street in Portland. She also

---

[1] The suppression court found the detective's testimony "credible on issues of fact" and found that the video "speaks for itself."

sent the detective a text message that contained the license plate number of the vehicle she had seen. The woman was adamant that the man she had seen in the vehicle was the same man who had assaulted her in the cemetery, and she told the detective that she would "stick the lives of her kids on it."

[¶5] When the detective received the woman's phone call, he was off-duty and exiting a grocery store located about ten minutes away from the 7-Eleven. After answering the call, the detective drove to his residence in a nearby town to remove groceries from his vehicle. While he was driving, the detective contacted dispatch and directed the Portland Police Department to locate and stop the vehicle that the woman had described. As the detective was pulling into his driveway, he was advised that Portland police officers had stopped the suspect's vehicle. The detective asked the officers to detain the suspect. He then put his groceries away and proceeded to the scene.

[¶6] While the detective was en route, the blue lights on the police cruiser detaining the suspect's vehicle remained activated. One of the officers on the scene asked for the suspect's license and registration, and asked him to wait for an agent from another jurisdiction to arrive. The suspect, Moses King, surrendered his license and registration. At some point, a second officer approached King's vehicle and reiterated that they were "just waiting for that South Portland [detective] to come down and, uh, he has a couple of questions for you." King

4

responded, "Alright," and the officer invited him to roll up his window to stay warm. The officers talked on the sidewalk while waiting. They did not return King's license and registration before the detective arrived.

[¶7]  The detective arrived on the scene more than fifteen minutes after King was stopped. He determined that King and his vehicle matched the description that the woman had provided, then approached King's vehicle, introduced himself, and asked whether King would mind exiting the vehicle. Less than three minutes later, the detective stated, "I just got a feeling it's you, and if it's you, you might as well just tell me the truth." He continued, "There was a [woman] that was picked up and assaulted . . . and I got a feeling it's you because not only does this car match the description, but she saw you today."

[¶8]  King responded, "Yeah I did pick a woman up that day and . . . we went over to South Portland to do a job whatever and . . . once she got the money she . . . said 'It's time to leave.' . . . . She started walking off and I said, 'You know how far it is to the road, don't you?' It's like a mile back in the cemetery there where I was, and she said 'What do you mean a mile?'" King stated that he had responded, "You didn't see how far we drove in here?'" King further explained, "She didn't want to do the job and I left." In response, the detective accused, "But you assaulted her, we know you assaulted her."

[¶9] King denied the accusation, and the detective falsely asserted, "We have your DNA on her bra, alright?" King responded, "DNA on her bra?" When King continued to deny the charges, the detective yelled, "Don't lie to me now, you are balls fucking deep right now, do not start lying to me because I cannot help you if you do. Be honest." "You threw her on the ground," the detective accused. King replied, "I didn't throw her on the ground, she fell . . . . She had the money in her bra and I pulled it out of her bra and that was that." King denied the detective's repeated accusations that he had strangled the woman, and the detective directed the Portland officers to place King in handcuffs. The detective continued questioning King for a brief time before giving him a paraphrased version of the *Miranda* warnings. King acknowledged that he understood his rights, but did not expressly waive his rights, and the detective's questions continued.

## II. PROCEDURAL HISTORY

[¶10] In February 2014, King was charged by indictment with one count of aggravated assault (Class B), 17-A M.R.S. § 208(1)(C) (2014),[2] and one count of criminal threatening (Class D), 17-A M.R.S. § 209(1). After King moved to suppress the evidence of his statements to the detective, the court (*O'Neil, J.*) held a hearing on the motion and entered a written decision making findings of fact and

---

[2]  Title 17-A M.R.S. § 208(1) has been amended in the time since King was charged. *See* P.L. 2015, ch. 358, § 1 (effective Oct. 15, 2015). The amendments are not relevant to this appeal.

6

conclusions of law. In that decision, the court ruled that the police had a reasonable, articulable suspicion to stop King's vehicle, that King's statements had been voluntary, that King was not in custody until he was placed in handcuffs, and that after he was handcuffed he did not waive his *Miranda* rights either expressly or impliedly. On King's motion for findings of fact and conclusions of law, *see* U.C.D.R.P.-Cumberland County 41A(d),[3] the court entered an order finding that the detective's "testimony [was] credible on issues of fact," and that the video recording of King's interaction with law enforcement "speaks for itself."

[¶11] At King's trial in September 2014, the alleged victim testified that King had agreed to pay her for sex and then driven her to a cemetery, where he threatened and assaulted her and seized cash that she had stored inside of her bra. Over King's renewed objection to the decision on his suppression motion, the court (*Kelly, J.*) admitted a video recording of the statements that King made to the detective before his formal arrest.

[¶12] The jury found King not guilty of the charge of aggravated assault, but delivered a verdict of guilty on the charge of criminal threatening. The court

---

[3] The pretrial proceedings in this matter were governed by the then-effective Portland Unified Criminal Docket Rules of Procedure, which have since been superseded by the Maine Rules of Unified Criminal Procedure. *See* M.R.U. Crim. P. 1(e). The specific Portland Unified Criminal Docket Rule of Procedure that was applicable here is nearly identical to Maine Rule of Unified Criminal Procedure 41A(d). *Compare* U.C.D.R.P.-Cumberland County 41A(d) *with* M.R.U. Crim. P. 41A(d).

entered a judgment on the verdict, sentenced King to eight months' imprisonment, and ordered him to pay a $300 fine.[4] King then commenced this timely appeal.

## III. DISCUSSION

[¶13] King argues that the court erred by declining to suppress the statements that he made to the detective before his formal arrest. He renews his contentions that (1) the stop of his vehicle was not justified by a reasonable, articulable suspicion; (2) his statements to the detective were not made voluntarily; and (3) he was subjected to a custodial interrogation while the detective was questioning him. King does not challenge the suppression court's findings of fact.

A. Standard of Review

[¶14] When a ruling on a motion to suppress "is based primarily on undisputed facts, it is viewed as a legal conclusion that is reviewed de novo." *State v. Bailey*, 2012 ME 55, ¶ 12, 41 A.3d 535 (quotation marks omitted). Because King moved for findings of fact and conclusions of law after the court ruled on his suppression motion, and he does not challenge the court's findings on appeal, we consider only the facts found by the court, and review de novo whether (1) there existed a reasonable, articulable suspicion to stop King's vehicle; (2) King's

---

[4] The court denied King's request for post-conviction bail and King appealed that decision pursuant to 15 M.R.S. § 1051(5) (2015) and U.C.D.R.P.-Cumberland County 46(d)(2). *See* M.R.U. Crim. P. 46(e)(2) (setting forth the same provisions as U.C.D.R.P.-Cumberland County 46(d)(2)). After a hearing, a single justice of this Court (*Alexander, J.*) overturned the trial court's decision and granted King's request for post-conviction bail.

8

statements were made voluntarily; and (3) King was not in custody before he was formally arrested. *See State v. Cilley*, 1998 ME 34, ¶¶ 5-6, 707 A.2d 79.

B.     Reasonable Articulable Suspicion & Voluntariness

[¶15]   Reviewing the court's conclusion de novo, we are satisfied that the woman's identification of King as her assailant was sufficiently reliable to give rise to an objectively reasonable, articulable suspicion that supported the detective's decision to order the stop of King's vehicle. *See State v. McDonald*, 2010 ME 102, ¶¶ 5-7, 6 A.3d 283. We also conclude that the suppression court's findings regarding the circumstances of the interrogation support the court's determination that King's statements to the detective were made voluntarily. *See State v. Lavoie*, 2010 ME 76, ¶¶ 13, 18, 1 A.3d 408. We devote the balance of our discussion to the issue of custody.

C.     Custody

[¶16]   A statement "made by a person subjected to custodial interrogation who is not first given *Miranda* warnings is inadmissible against that person [in the State's case-in-chief] at trial." *State v. Kittredge*, 2014 ME 90, ¶ 16, 97 A.3d 106 (alteration omitted) (quotation marks omitted). There is no dispute that King was subjected to an interrogation before he received *Miranda* warnings; the issue is whether he was in custody for Fifth Amendment purposes when he answered the detective's questions before his formal arrest. In the face of a *Miranda*-based

challenge, the State must prove the admissibility of a defendant's statements by a preponderance of the evidence. *Id.* ¶ 17. On appeal, we review the court's custody determination de novo. *Id.*

[¶17] In analyzing whether King was in custody prior to his formal arrest, we consider "whether a reasonable person standing in the shoes of [King] would have felt he or she was not at liberty to terminate the interrogation and leave or if there was a restraint on [King's] freedom of movement of the degree associated with a formal arrest." *See State v. Prescott*, 2012 ME 96, ¶ 10, 48 A.3d 218 (quotation marks omitted). The custody test involves an examination of the objective characteristics of the interaction between the police and the defendant, and an analysis of a number of factors in their totality. *Id.* ¶ 11. The objective characteristics of an interrogation that may be considered in determining whether a defendant was in custody include, but are not limited to, the following factors:

(1) the locale where the defendant made the statements;

(2) the party who initiated the contact;

(3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);

(4) subjective views, beliefs, or intent that the police manifested to the defendant to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;

(5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a

reasonable person in the defendant's position would perceive his or her freedom to leave;

(6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);

(7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

(10) the duration and character of the interrogation.

*State v. Dion*, 2007 ME 87, ¶ 23, 928 A.2d 746.

[¶18] We consider these factors in their entirety as they relate to the circumstances of King's interrogation by the detective. The following factors weigh against a conclusion that King was in custody. The questioning occurred on a public street with which King was familiar. King did not manifest a belief that he was not free to leave, agreed to wait for the detective's arrival, and then agreed to exit his vehicle and answer the detective's questions. During the wait and subsequent interrogation, King's vehicle was not blocked in and he was not physically restrained. The interrogation was also of relatively short duration, and was conducted by a single plainclothes detective.

[¶19] Other factors, however, weigh heavily in favor of a conclusion that King was in custody. King was detained for more than fifteen minutes before the

interrogation commenced.[5] During that detention, his license and registration were taken from him and were not returned. Throughout the interrogation, three officers were present, two in uniform, and blue lights were flashing. The detective told King that he had a feeling that King had committed a crime, "which suggested that he was a focus of the investigation." *See Kittredge*, 2014 ME 90, ¶ 18, 97 A.3d 106. The detective also employed an aggressive and accusatory line of questioning and made false statements about evidence that purportedly tied King to the crime.

[¶20] In their totality, the objective characteristics of King's interrogation do not reasonably support the suppression court's conclusion that King was not in custody until he was formally arrested. King was without his license and registration for more than fifteen minutes while waiting for the detective to arrive and he remained without those important documents when the detective arrived and commenced an aggressive interrogation, replete with accusations and deceptive suggestions designed to elicit an incriminating response.

[¶21] A brief surrender of identifying documents does not transform an investigatory detention into a custodial arrest; if it did, nearly every routine traffic

---

[5] On appeal, King argues that his detention was lengthier than reasonably necessary and that it was therefore akin to a formal arrest. We are unpersuaded. Although we conclude that the length of King's detention is a factor in determining whether King was in custody at the time that the detective questioned him, we cannot say that King's detention lasted longer than reasonably necessary to effectuate the purpose of the stop and that the length of the detention by itself created a custodial situation. *Cf. Florida v. Royer*, 460 U.S. 491, 500, 505-06 (1983).

stop would be custodial. However, the retention of an individual's license and registration by law enforcement for a lengthy period, and without explanation, is a factor that weighs in favor of a conclusion that there was a restraint on the individual's freedom of movement to the degree associated with a formal arrest. *See Prescott*, 2012 ME 96, ¶ 10, 48 A.3d 218; *United States v. Lopez*, 443 F.3d 1280, 1286 (10th Cir. 2006); *United States v. Glover*, 957 F.2d 1004, 1009 (2d Cir. 1992). The tenor of an interrogation is, by itself, not dispositive of the custody inquiry. However, there is a positive correlation between the accusatory quality of police questioning and the likelihood that an interrogation is custodial. *See White v. United States*, 68 A.3d 271, 281 (D.C. 2013).

[¶22] In this case, when we consider the officers' failure to return King's license and registration in conjunction with the duration of King's detention and the subsequent, aggressive interrogation—which occurred in the presence of multiple uniformed officers and under flashing blue lights—we conclude that there was a restraint on King's freedom of movement to the degree associated with a formal arrest. A reasonable person in King's position may have had reason to expect a temporary police encounter throughout the initial detention. However, when the detective began leveling pointed accusations, and the officers failed to return King's license and registration or to provide any other reassurances as to the stop's temporary nature, the detention became custodial.

[¶23]   We conclude that King was in custody when he responded to the detective's accusations and aggressive questions.  Because King was in custody when he made incriminating statements without the benefit of *Miranda* warnings, those statements were inadmissible against him at trial.  We therefore vacate the court's suppression order to the extent that it permitted the admission of King's responses to the detective's questions, and we vacate the conviction obtained by the admission of those incriminating statements.

The entry is:

> Judgment of conviction vacated.  Suppression order vacated in part; remanded for entry of an order and further proceedings consistent with this opinion.

---

**On the briefs:**

David S. Bobrow, Esq., Bedard & Bobrow, P.C., Eliot, for appellant Moses King

Stephanie Anderson, District Attorney, and Angela Cannon, Asst. Dist. Atty., Prosecutorial District No. Two, Portland, for appellee State of Maine

**At oral argument:**

David S. Bobrow, Esq., for appellant Moses King

Angela Cannon, Asst. Dist. Atty., for appellee State of Maine

Cumberland County Unified Criminal Docket docket number CR-2013-8594
FOR CLERK REFERENCE ONLY