STATE OF MAINE
CUMBERLAND, ss.

UNIFIED CRIMINAL DOCKET
PORTLAND
Docket No. CDCR-15-3256

STATE OF MAINE )
)
v. )
)
SUGELLE WARSAME )
)
Defendant )

ORDER ON DEFENDANT'S
MOTION TO SUPPRESS

Defendant's Motion to Suppress came before the court for hearing on February 8, 2022. Defendant, Sugelle Warsame, was present with his lawyer, Attorney Sharon Craig. Assistant Attorney General Johanna Gauvreau appeared on behalf of the State. The court heard testimony from Detective Ethel Ross of the Maine State Police, and Detective Andrew Haggerty of the Portland Police Department and Special Agent Nicholas Goodman, also of the Portland Police Department but assigned to the Maine Drug Enforcement Administration, regarding the circumstances of the stop, search, and seizure of property, and statements made by the Defendant at the scene.

Mr. Warsame seeks suppression of property recovered from his person and from around the area of the car where Defendant was seated, and any and all statements Defendant made during the stop.

Based on the testimony and exhibits entered at hearing, the court finds the following facts:

On May 1, 2015, Maine State Police Major Crimes division had information that a homicide suspect was inside a particular address in Portland. As such, Detective Ethel Ross was engaged in surveillance on that address. Detective Ross observed multiple men fitting the suspect's general description exit that address and saw two of those men enter a red Buick which then drove away from the residence. She believed, based on photo of the suspect, information she had about his presence at the residence, and her surveillance of the residence that the suspect may be inside the car. As a result, Detective Ross communicated to other detectives assisting her from the Portland Police Department to make a stop of the car to identify the occupants.

Shortly after, Detective Haggerty engaged the lights and sirens of his police vehicle and made a traffic stop of the red Buick. The red Buick pulled into a local neighborhood and turned off its lights. Detective Haggerty and his partner pulled their car in behind the Buick with police lights still engaged. Detective Haggerty was dressed in plainclothes with a strap labelled "police", and his police vehicle was unmarked.

Detective Haggerty approached the passenger side and asked Defendant to exit the car in order to identify him. Detective Haggerty learned that Defendant was at liberty on bail with conditions permitting his random search for illegal drugs and weapons.

During the interaction near the car, Defendant appeared nervous and sweating. When Detective Haggerty asked him why he was sweating, Defendant told the detective that he didn't want to go to jail. Still near the car, Detective Haggerty searched

2

Defendant's person and recovered $1500 in U.S. currency, which Defendant told the detective was the proceeds from online gambling. In a search of the area where Defendant was seated on the passenger side of the car, Special Agent Goodman recovered a digital scale with suspected cocaine residue and a cell phone from under the seat, and approximately $6,800 in U.S. Currency from the glove compartment.

Following the search near the car, Defendant, neither handcuffed nor under arrest, sat in a Maine State Police vehicle with another detective for an interview related to the homicide. No other evidence was presented about what conversation may have transpired inside that vehicle and the content is not considered by this court.

After speaking with the Maine State Police detective, Defendant exited the vehicle and Detective Haggerty approached him. Detective Haggerty told Defendant that he could be taken to jail, where he would later be strip searched. Detective Haggerty told Defendant that if Defendant cooperated, or turned over the contraband that he believed Defendant was hiding on his person, that Defendant would not be arrested. The interaction appeared calm, and Defendant was cooperative. Detective Haggerty invited Defendant to move behind a truck on the scene to offer Defendant privacy. Defendant moved behind the truck at which point Detective Haggerty observed Defendant remove a small plastic bag from his buttocks containing what later tested positive as cocaine. At that time, Defendant also stated that $400 of the money already recovered from his person during the earlier search near the car was proceeds from drug trafficking activity.

3

Defendant was not arrested on May 1, 2015. Instead, he was indicted by a grand jury on June 4, 2015 for Unlawful Trafficking of Scheduled Drugs pursuant to 17-A M.R.S.A. § 1103(1-A(A), Unlawful Possession of Scheduled Drugs pursuant to 17-A M.R.S.A. § 1107-A(1)(C), and Violation of Conditional Release pursuant to 15 M.R.S.A. § 1092(1)(A) all charges stemming from the May 1, 2015 stop, search, and conversation with police described herein.

**Validity of the Stop**

Limited governmental intrusions for the purpose of investigation are permissible under the Fourth Amendment upon a showing of reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Under *Terry*, determining the legitimacy of an investigatory search or seizure requires a two-step analysis. The court must assess "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *State v. Langlois*, 2005 ME 3, ¶ 7, 863 A.2d 913 (citing *Terry*, 392 U.S. at 20; *see also State v. Hill*, 606 A.2d 793, 795 (Me. 1992). The Supreme Court has also found that reliance on a wanted flyer justifies an investigatory stop. *United States v. Hensley*, 469 U.S. 221 (1985).

At the time of this traffic stop, Detective Ross had been engaged in the homicide investigation that precipitated the stop. She had used a photograph of the homicide suspect to direct the creation and distribution of a wanted poster by the Maine State

4

Police. She had information that the suspect was with the Defendant and was using the Portland residence where she was conducting surveillance. Detective Ross observed multiple males matching the suspect's description entering a red Buick at the residence. After that observation, Detective Ross instructed Detectives from the Portland Police Department to conduct a stop of the red Buick and Detective Haggerty did so. The court finds, based on the testimony elicited and exhibits entered as evidence at hearing, that the stop was justified and the execution of the stop was reasonably related in scope to the circumstances which justified it.

## Property from the Vehicle and Money from Defendant's Person

At the time of this interaction, the Maine Bail Code permitted the imposition of a pre- release condition that allowed random searches of a defendant's home, person, or vehicle for prohibited items as described by the court at any time without articulable suspicion or probable cause.[1] Those prohibited items included dangerous weapons, alcohol, and illegal drugs.

The Law Court has held that, under the Bail Code as it existed at the time of this search, "[a bailee's] signature on the bail bond is a sufficient manifestation of his voluntary consent" to the search provisions provided therein, provided that those search

---

[1] 15 M.R.S. § 1026(3)(9)-(9-A)(a) (2015).

5

conditions are legal. *State v. Ullring*, 1999 ME 183, ¶ 12, 741 A.2d 1065. Defendant makes no assertion that the bail condition permitting his random search was not legal.

Further, the Law Court opined that any condition set by a judicial officer is presumptively reasonable. *Id.* ¶ 26. Defendant has not challenged the reasonableness of the conditions in the bail bond.

The Court finds that the search of Defendant's person both upon exit of the car and the limited search of the passenger area of the car are permissible as consent searches pursuant to the Defendant's signed bail bond. The Court finds that, at this point in Defendant's interaction with police, the voluntariness of Defendant's consent lies in signing the bail bond on April 6, 2015 (see State's exhibit #2), which Defendant has not challenged. *See Ullring*, 1999 ME 183, ¶ 12.

### Alleged Drugs and Inculpatory Statement

Defendant seeks suppression of both the alleged cocaine and the statement that $400 of the money recovered from Defendant's person was proceeds from drug trafficking. Defendant argues that the detective's promise to not arrest him if he gave over any contraband in his possession was a false promise of leniency and, as such, a violation of due process.

In considering suppression of evidence obtained by impermissible police conduct, the court draws no distinction between physical evidence and statements. *State v.*

6

*Barlow*, 320 A.2d 895, 901 (Me. 1974) quoting *Wong Sun v. United States*, 371 U.S. 471, 486 (1963). Defendant does not claim that the statements nor evidence was "forced" from him, therefore the determination is whether the admission of the evidence violates Defendant's right to due process. *State v. Hunt*, 2016 ME 172, ¶ 19, 151 A.3d 911. "The Due Process Clause . . . prohibits deprivations of life, liberty, or property without fundamental fairness through governmental conduct that offends the community's sense of justice, decency and fair play." *Id.* (citing *State v. McConkie*, 2000 ME 158, ¶ 9, 755 A.2d 1075).

The Law Court has deemed that "[A] confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *Hunt*, 2016 ME 172, ¶ 21 (quoting *State v. Mikulewicz*, 462 A.2d 497, 500-501 (Me. 1983)). In considering a claim that a Defendant's due process rights were violated, the court "examine[s] whether his statements were free and voluntary or whether, considering the totality of the circumstances under which the statements were made, their admission would be fundamentally unfair." *Id.* ¶ 19. The totality of the circumstances may include:

> the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct.

7

*Id.* ¶ 22. (quoting *State v. George*, 2012 ME 64, ¶ 21, 52 A.3d 903). The presence of a false promise of leniency weighs significantly into the court's consideration of voluntariness under a totality of the circumstances analysis. *Id.* ¶ 29.

"An inducement to confess is improper when a promise of benefit or reward has been made or implied by one whom the accused could reasonably believe had the authority or power to execute it." *State v. Tardiff*, 374 A.2d 598, 601 (Me. 1977). "A confession, otherwise freely and voluntarily made, is not vitiated by a promise of leniency unless such promise was the motivating cause of the confession." *Id.* Under *Tardiff* and its progeny, the court must decide two questions: first, whether the detective made a false promise of leniency, and second, whether that promise induced Defendant's statement and his surrender of physical evidence.

"A promise is false when it involves a benefit that could not be delivered – or is not in fact delivered - by the governmental agent making the promise, or when the agent has no authority to give the defendant what was offered." *State v. Hunt*, 2016 ME 172, ¶ 29. In this case, the detective made a promise of a specific benefit, not to arrest the Defendant if he gave over the drugs the detective suspected he possessed. This was a promise the detective had the authority to deliver as a law enforcement officer and did deliver. The detective did not arrest Defendant on May 1, 2015.

Here, the detective's promise or benefit to Defendant was not to arrest, significantly different than a promise of leniency. "A promise involves leniency when it

8

suggests that the process of prosecution or sentencing will somehow be 'better' for the defendant if the defendant confesses." *Hunt*, ¶ 29. The detective did not make any promises regarding prosecution or sentencing if Defendant agreed to turn over the evidence, either implied or implicit. *See, e.g.,* U.S. v. Haak, 884 F.3d 400, 410 (2d Cir. 2018) (finding an officer did not promise the defendant immunity when none of his statements, in so many words, promised not to charge the defendant with a crime if he cooperated with police). The detective's only promise was not to arrest Defendant, and he delivered on his promise by allowing Defendant to freely leave the traffic stop on May 1, 2015.

Because the Court finds the detective's promise not to arrest Defendant was not a false promise of leniency, but rather a promise which was upheld, neither Defendant's statement regarding $400 of the $1500 recovered from his person nor surrender of physical evidence were induced by a false promise of leniency. *See State v. Tardiff*, 374 A.2d 598, 601 (Me. 1977). While this Court finds no false promise of leniency, it must nevertheless address the totality of the circumstances to determine whether Defendant voluntarily offered the statement and physical evidence, and if admission of such evidence violates Defendant's due process rights. *State v. Hunt*, 2016 ME 172, ¶ 33 "Although the determination of the historical facts underlying a question of voluntariness must be made by the trial court . . . the 'psychological fact' of the voluntariness of a confession is a determination of law." *Id.* ¶ 34.

9

The State bears the burden to prove voluntariness beyond a reasonable doubt based on a totality of the circumstances. *See State v. Wiley*, 2013 ME 30, ¶ 15, 61 A.3d 750. The Court finds that although Defendant did not receive a recitation of *Miranda* warnings,[2] the State met its burden in proving Defendant's voluntariness beyond a reasonable doubt. *See Hunt*, 2016 ME 172, ¶ 21. Defendant was not in custody,[3] as a reasonable person in his shoes would have felt he or she was at liberty to terminate the interrogation and leave. Factors that show the interrogation was voluntary include: its locale in a residential parking lot during a traffic stop, *see Berkemer v. McCarty*, 468 U.S. 420, 437 (1984); police manifested their intent that the purpose of the traffic stop was the homicide investigation; police manifested an offer not to arrest Defendant; Defendant was under no physical restraint; and Defendant was calm. *See State v. Bryant*, 2014 ME 94, ¶ 10, 97 A.3d 595. Defendant had already consented to a search in accordance with his Bail Bond, and the detective testified he believed he had probable cause to arrest Defendant during the entirety of the stop, reinforcing the detective's offer not to arrest him if he cooperated.[4] Defendant left the traffic stop after the interrogation,

---

[2] A person who is in custody and subject to an interrogation must be advised of the rights referred to in *Miranda v. Arizona*, 384 U.S. 436, 478-79, 86 S. Ct. 1602 (1966). *State v. Bryant*, 2014 ME 94, ¶ 9, 97 A.3d 595.

[3] A subject is in custody if he is subjected to (1) a formal arrest or (2) a restraint on freedom of movement to the degree associated with a formal arrest. *State v. Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222. A person is subject to a restraint on freedom of movement to the degree associated with a formal arrest if "a reasonable person, standing in the defendant's shoes, would have felt he or she was not at liberty to terminate interrogation and leave." *State v. Bryant*, ¶ 10 (quoting *State v. Bragg*, 2012 ME 102, ¶ 8, 48 A.3d 769).

[4] The State argued, in the alternative, that the inevitable discovery exception applied in this case, but the court does not address this argument.

10

further supporting he was not in custody and that he understood the officers' manifested intent not to arrest him.

Based on the forgoing, after detailed consideration of the evidence offered at hearing, the court finds in sum that the initial traffic stop was justified. The court further finds that the $1500 from Defendant's person, the scale and cellphone recovered under the passenger seat, and the $6800 recovered from the glove compartment, as well as any statements made by the Defendant during the initial interaction in the vicinity of the red Buick are admissible. The bag of cocaine and the Defendant's statement about the source of $400 (of the previously recovered $1500) are also admissible.

It is accordingly ORDERED that Defendant's Motion to Suppress is hereby DENIED.

DATED: 22 Mar 2022

_____
Jed J. French, Chief Judge
Unified Criminal Docket

RECD KNOX CLERKS OFC
MAR 22 '22 AM 10:39

11