STATE OF MAINE
CUMBERLAND, ss.

UNIFIED CRIMINAL DOCKET
DOCKET NO. CV-19-06107

STATE OF MAINE )
)
)
)
v. ) ORDER ON DEFENDANT'S MOTION
) TO SUPPRESS
KENNETH MORANG )
)
Defendant )
)
)
)
)

Before the Court is Defendant Kenneth Morang's ("Morang") Motion to Suppress. For the reasons set forth herein, Morang's Motion is DENIED.

## FACTUAL BACKGROUND

Based on the testimony provided and the exhibit admitted at hearing, as well as the parties' filings in this case to date, the court finds that the following facts are supported by the record:

On July 21st, 2019, Kenneth Morang was traveling home from his seventh consecutive, sixteen hour shift as a correctional officer at the Cumberland County Jail. A long time employee of the Cumberland County Sheriff's Office, Morang had a history of working significant overtime hours.

While on his way home, Morang rear ended a vehicle carrying four passengers: Michael Bell and his three daughters. The impact pushed Bell's vehicle into oncoming traffic where it

SEND CLERK CLERK OFFICE
MAY 2 '22 ....

collided with another vehicle. One of Bell's daughters suffered severe injuries that resulted in her death days later.

After the accident occurred, around 3:30 pm, Gorham Police Department Lieutenant Michael Nault contacted Detective Sergeant Daniel Young ("Young") to inform him that a serious accident had occurred. Young, who was home at the time and not working, immediately put on plain clothes, concealed his service weapon, and traveled to the hospital to speak with the various operators of the three motor vehicles involved in the accident.

Young arrived at Maine Medical Center ("MMC") at approximately 4:30 pm, in an unmarked police vehicle. He entered the emergency department, spoke briefly with the nurses and staff, and eventually located Michael Bell, one of the drivers involved in the accident. He spoke with Bell for a short time to obtain some general information about the accident, and how it had occurred. Young then received consent from Bell to obtain a blood sample from him. Soon after consent was obtained, Michael Diclemente ("Diclemente"), a state certified blood technician who works for the Scarborough Fire Department and Officer Alisha Smith ("Smith"), who works patrol for Gorham's Police Department, conducted the blood draw.

Young then learned that Morang was in room K-9, a small, trauma treatment room located in MMC's emergency department. Young, Diclemente and Smith subsequently walked to Morang's room. Upon arrival, Young entered the room first and saw Morang in a hospital bed. He also saw Morang's wife, his daughters, and his grandchildren there with him. Because he proceeded to the hospital directly from home, Young did not have any recording equipment with him despite department policy requiring it when speaking with witnesses regarding an active investigation.

2

Upon Young's entry, Morang was upset but did not appear to be under the influence of any substance. At this time, Morang was receiving fluids intravenously, but the court is not aware whether he was receiving any other medications.[1] Later, it was learned that Morang had suffered a fractured sternum. At the time, he did not appear to have any injuries which threatened his mental faculties. He was uncomfortable and was profoundly distressed over the prospect of injury to the minor child. Diclemente and Smith obtained Morang's consent, drew a sample, and promptly exited the room.

Young then began to speak with Morang and informed him that he was not in custody and that Morang did not have to speak with him. Young further told Morang he could stop the interview and ask him to leave at any time. No *Miranda* warnings were given because Young did not believe Morang was in custody.

Morang informed Young that he had just finished working a double shift at the Cumberland County Jail and was on his way home when the accident occurred. He then indicated, through his body language and his words, that he had "nodded off" a couple off times during the drive home. On the last occasion in which he had "nodded off" Morang said that he opened his eyes and had no time to either hit the brakes or correct course prior to rear ending the vehicle in front of him. Morang also told Young that he slept about four hours a night on average.

Throughout Young and Morang's twenty minute conversation, Young testified that Morang remained polite, respectful, attentive and matter of fact, which is consistent with Morang's behavior in the recorded second interview. Young also said he was emotional and

expressed remorse for Bell's daughter that was in critical condition. After Morang signed MMC's medical release form, Young left.

Young entered the hospital room first and, although there was conflicting testimony as to the nature of the statement, he offered some words of comfort to Morang and his family. The family interpreted the statements were a promise that no charges would be filed. The court does not find that Young made statements constituting such a promise.

Two days later, on July 23rd, Young returned to MMC to speak with Morang again. He was dressed in plain clothes, had a firearm on his person which was concealed and was equipped with a recording device. When Young arrived at MMC, he went to check on Bell's daughters and then went to Morang's hospital room which was located on the first floor of the Hospital. Morang had been moved to this room after his brief stay in MMC's emergency department.

When Young reached Morang's room, Morang was in a wheelchair and preparing to be discharged. His granddaughter Jasmyne was present during this interview, moving in and out of Morang's room as it occurred. Other than Morang, there were no other law enforcement officers present for this interview.

During this second interview, a recording of which was admitted as State's Exhibit One at hearing, Young told Morang that he was interviewing all the motor vehicle operators involved in the crash. He then told Morang he could go to the station for his interview or conduct it at the hospital. Morang elected to do it in his hospital room.

Young began the interview by telling Morang that he did not have to talk with him. Morang indicated that he understood and said that he would tell Young "anything he wanted to know." Young began the interview by asking questions in a leading fashion, recapping Morang's

4

pre-accident work schedule with him. Morang recalled that he had worked a double shift and was tired. Young then asked Morang how much of the drive home he remembered.

Morang said he remembered a part of it, and that he was tired and likely "nodded off" or "passed out" immediately before he hit the vehicles. He said he "didn't see the vehicles until [he] hit" them. Morang said he had felt himself "nod off" on that particular drive home a few times, and that it was "nothing he hadn't felt before." Morang then again told Young that he usually worked 100 hour weeks. The ten minute interview concluded with Morang stating that the accident was a result of "him being foolish" and not "paying attention to his body when he should have."

On November 8th, 2019, a Cumberland County grand jury indicted Morang, charging one count of Manslaughter, Class A. On September 18th, 2020, Morang filed a Motion to Suppress Statements, and on April 5th, 2021, a suppression hearing was held at the Cumberland County Courthouse. At hearing, the State presented one witness, Detective Sergeant Young, and the Defense presented three: Amy Mejias, Jasmyne Mejias, and Arianna Mejias.

## DISCUSSION

Morang asks this Court to suppress two sets of statements that the State contends are incriminating as involuntary. The first were given on July 21st, 2019, at MMC soon after the accident occurred, and the second were given on July 23rd, 2019, during Young's second visit to the hospital to interview Morang. Throughout his filings and during hearing, Morang has only challenged the voluntariness of each set of statements. He has not raised any *Miranda* based challenges.

5

The State bears the burden to prove beyond a reasonable doubt that a defendant's statement was voluntary. *See State v. Lavoie*, 2010 ME 76, ¶ 18, 1 A.3d 408. A statement is voluntary if "it is the result of the defendant's exercise of his own free will and rational intellect." *State v. George*, 2012 ME 64, ¶ 21, 52 A.3d 903.

To determine whether statements made are voluntary, the Court considers the totality of the circumstances. *Id.* The court may consider the following factors in its voluntariness analysis: the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation of Miranda warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct. *Id.* A Defendant's emotional distress does not serve as a *per se* basis for suppression of statements, *see State v. Coombs*, 1998 ME 1, ¶ 12, 704 A.2d 387, nor does the existence of drugs or other medication in the defendant's system, *see State v. Williams*, 2020 ME 128, ¶ 49, 241 A.3d 835. Such circumstances are, instead, part of the totality of the circumstances analysis. *See, e.g., State v. Kierstead*, 2015 ME 45, ¶ 15, 114 A.3d 984.

Morang seeks to suppress both his July 21st and July 23rd statements as involuntary. Each of statements is addressed in turn.

*1. July 21st*

Comparing the circumstances of this interview against the voluntariness factors set forth in the Law Court's Fifth Amendment jurisprudence, the court finds that the statements given by Morang to Young on July 21st were voluntary. Young was in plain clothes, had his weapon concealed, and informed Morang that he did not have to speak with him if he did not want to. Young also gave Morang the option of stopping the interview at any time. The interview took

6

place in a hospital room and lasted only fifteen to twenty minutes. Additionally, although no *Miranda* warnings were given, Morang was not in custody for *Miranda* purposes. *See State v. King*, 2016 ME 54, ¶ 17, 136 A.3d 366 (listing the ten factors a court considers in a custody analysis). There was no testimony that Young was coercive or was overly persistent in his efforts to obtain answers from Morang.

Morang's three witnesses all presented different accounts of Young's statements regarding the risk of charges . His daughter, Amy, described an express promise of leniency, while his granddaughters Jasmyne and Arianna described Young's words as conveying the sentiment that "everything was going to be okay." The court finds that while Young offered comforting words to the visibly upset Morang and his family, he did not make statements that would have deceived Young to believe there was no risk that charges would be filed.

Morang was sixty-five at the time of the interview, and his physical health was certainly impaired by the accident, there was no evidence presented that either of these things rendered his statements not of "free choice" or "a rational mind." *See Williams*, 2020 ME 128, ¶ 43, 241 A.3d 835. There was also no testimony that Morang was receiving any medication which would affect his mental faculties. Additionally, testimony from both State and Defense witnesses indicated that Morang was upset, but none of the testimony indicated that he was so distraught that his answers to Young's questions were not the product of his rational intellect. As Young indicated in his testimony, Morang remained matter of fact throughout the interview and was attentive in providing answers to his questions. Testimony that Morang was "in shock" or "upset" does not disturb this conclusion. Accordingly, the Court finds that Morang's statements made to Young on July 21st were voluntary. The State has proven this beyond a reasonable doubt.

2. *July 23rd*

Two days after the initial interview, on July 23rd, Young again returned to MMC to interview Morang. This time, equipped with a recording device, Young located Morang in his hospital room preparing for discharge from MMC.[2] During this second interview, Morang again made several incriminating statements. The Court finds these statements were voluntary as well.

Only one officer present during this interview. Young was the only law enforcement officer that spoke with Morang and he was, again, dressed in plain clothes with his firearm concealed. This interview also took place at MMC and was approximately ten minutes long. At the beginning of the interview, Morang indicated he understood he was free to terminate the interrogation at any moment. Accordingly, Morang was not in custody during this interview either. *See supra,* n.8; *see also King,* 2016 ME 54, ¶ 17, 136 A.3d 366. Thus, no *Miranda* warnings were required. Additionally, Young attempted no deceit or trickery, and the recording offered no evidence of any threats made by Young.

With regard to Morang's individual characteristics, the recording of the July 23rd interview evidences that his mental or physical health was not significantly impaired. Morang's responses to Young's questions are clear, concise and matter of fact. Although Morang references his fractured sternum, he does not indicate that he was under the influence of any medications, or in so much pain that it distorted his mental acuity. To the contrary, Morang elected to speak with Morang in the hospital room and answer any questions Young had. He stated, again and again, that he would answer whatever Young asked.

Based on the witnesses' testimony and recording, the evidence is the Morang is a sincere man who was genuinely remorseful and was resolved be candid with his fellow law enforcement officer about what happened. The allegedly incriminating statements were not the result of

---

[2] The recording of this interview was admitted as State's Exhibit One at hearing.

inducement. Instead, the Defendant's own positive attributes do not help him at the stage of the case.

Accordingly, the State has proven that Morang's statements on June 23rd were voluntary beyond a reasonable doubt.

## CONCLUSION

Morang's statements to law enforcement on July 21st and 23rd, 2019, were both voluntary. Defendant Kenneth Morang's Motion to Suppress is Denied.

Dated: 5/1/2022

Thomas R. McKeon
Justice, Maine Superior Court